UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORDY RICE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FIELDER, et al.,<br><br>　　　　　　Defendants. | Case No. 2:18-cv-02743-TLN-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant Wetterer was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Pending before the Court is Defendant Wetterer's[1] motion for summary judgment, ECF No. 55, Plaintiff's opposition, ECF No. 57, and Defendant's reply, ECF No. 58. Defendant argues that he is entitled to summary judgment because there is no evidence that he was deliberately indifferent to Plaintiff's serious medical needs. ECF No. 55. He also claims qualified immunity. The undersigned finds that Defendant Wetterer was not deliberately indifferent and thus recommends granting his motion for summary judgment.

---

[1] Defendant Fielder did not join Defendant Wetterer's motion for summary judgment.

1

## I. BACKGROUND

Plaintiff was housed in the exhibitionist behavior unit ("IEX unit") at California State Prison-Sacramento and on September 14, 2016, he told custody staff that he was suicidal. ECF No. 55-4 at 20. He was placed in a holding cell for a suicide risk evaluation, which was conducted by Defendant Wetterer, a clinical psychologist. Id. at 19-20. Defendant Wetterer noted in his evaluation that Plaintiff did not report a plan to kill himself or a desire to die. Id. at 19. Plaintiff stated during the evaluation, "I'm not supposed to be up in this block man, I don't have any recent IEX's, this ain't right. I'm feeling like cutting on myself right now, I can't deal with this, it feels like I am being punished for something I didn't do." Id. Defendant Wetterer noted that it appeared Plaintiff's suicidal intentions were in response to being transferred to the IEX unit. Id. Defendant Wetterer also noted that prior to his examination of Plaintiff, custody staff reported hearing Plaintiff talking with another inmate about an upcoming sporting event. Id.

A review of Plaintiff's medical history showed that he was seen for suicide intentions on three prior occasions. The first time was in 2013 when he stayed at a Mental Health Crisis Bed ("MHCB") for eighteen days, during which he did not use any of the treatment opportunities available to him. Id. Roughly two years after that, he had superficial cut and splashed Kool-Aid in his cell to make it look like blood. Id. Finally, in summer of 2016, Plaintiff stayed at the Department of State Hospital ("DSH"). Id.

Defendant Wetterer also determined that Plaintiff was at a low risk for intentionally killing himself. Id. Defendant Wetterer concluded that Plaintiff showed no signed of psychosis, excessive anxiety, panic, or thoughts consistent with hopelessness. Id. He noted that there had been no near lethal attempts or any history of such, no self-injurious behavior, no evidence of intent or excessive guilt, expression of hopelessness or helplessness, depression, no signs of symptoms of acute psychotic disorder or other major mood disorder. Id. Defendant Wetterer considered Plaintiff to have some risk for unintentional lethal harm if he were to become agitated. Id. Following the evaluation, Defendant Wetterer did not recommend hospitalization, but did request that clinical staff continue to work with Plaintiff to manage his depression and teach him distress tolerance skills. Id. After Defendant Wetterer's evaluation, Plaintiff cut his

wrists with a razor. ECF No. 56 at 18. Plaintiff was the transported to another building and placed on suicide watch. Id. at 19.

Plaintiff returned to his regular housing the next day on September 15 and was evaluated for suicide risk by Dr. R. Norris.[2] Id. at 20; ECF No. 55-4 at 21. Dr. Norris noted that Plaintiff did not report a plan to kill himself or a desire to die and "[d]enied [having] current suicidal or homicidal ideation, intent, or plans." Id. at 21-22. Plaintiff also told Dr. Norris, "[t]hey're messing with my program. They put me in the IEX cluster, but said I'm not supposed to be there." Id. After Dr. Norris suggested Plaintiff take his concerns to his housing committee, Plaintiff agreed to do so. Id. Dr. Norris considered Plaintiff as being at a moderate risk because of his medical history. Plaintiff did not make any suicide attempts that day. ECF No. 56 at 20.

Plaintiff was evaluated again by Dr. Norris on September 16, 2016. ECF No. 55-4 at 23. Dr. Norris noted that plaintiff did not report a plan to kill himself or a desire to die. Id. Dr. Norris noted that Plaintiff was at a low acute risk because Plaintiff denied suicidal ideation. He also noted his belief that Plaintiff's suicidal ideation was a secondary gain for being moved out of the IEX unit. Id. That evening, Plaintiff cut his wrist with a paperclip and was transferred to another cell. ECF No. 56 at 22.

The next morning, September 17, 2016, Plaintiff reported suicidal ideation to custody staff. ECF No. 55-4 at 26. He was evaluated by Defendant Dr. J. Fielder, who concluded that hospitalization was not clearly required and that the "evidence strongly suggests [Plaintiff] is dissembling & mildly self-injuring for secondary gain, i.e., controlling housing." Id. Defendant Fielder further concluded that "admitting [Plaintiff] to a MHCB would only reinforce this behavior but also consume valuable [mental health] resources." Defendant Fielder recommended that Plaintiff be placed on a five-day suicide prevention protocol. Id.

///
///
///

---

[2] Dr. Norris is not a party to this action.

Within minute of learning about Defendant Fielder's recommendation, Plaintiff cut his wrist and reported suicidal ideation and threats. Id. at 28-30. Defendant Wetterer evaluated Plaintiff shortly thereafter. Id. at 31-32. During the evaluation, Plaintiff said, "I still feel suicidal, why am I being sent back?  What do I have to do, chop my head off?  I'm burnt out, I'm tired of being locked up." Id. at 32. Defendant Wetterer noted that Plaintiff was showing "parasuicidal gestures" in order to be "placed in a crisis bed." Id. He recommended Plaintiff be removed to his regular housing. Id. After Defendant Wetterer's evaluation, Plaintiff cut his left forearm. Id. at 33. An evaluation of his injuries showed that the cut was "quite deep, about 0.5 cm deep and approximately 4 cm wide." Id. He received sutures for the wound. Id.

Plaintiff was evaluated the next day by D. Salz. Id. at 36. Salz concluded that hospitalization was not necessary and recommended that Plaintiff remain on suicide prevention protocols. Id.

## II.  STANDARD FOR SUMMARY JUDGEMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

4

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISUCSSION

Defendant Wetterer argues that Plaintiff did not have a serious medical need and that he was not deliberately indifferent because he did not believe Plaintiff was a danger to himself. ECF No. 55-2 at 7-9. The Court finds that Plaintiff did suffer a serious medical need, but that Defendant Wetterer's response was not deliberately indifferent. Thus, the Court recommends that Defendant Wetterer's motion be granted.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v.

Cnty. of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Ninth Circuit has expressly held that, "[a] heightened suicide risk or an attempted suicide is a serious medical need." Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010), vacated, 563 U.S. 915 (2011), opinion reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011). Plaintiff discussed with Defendant Wetterer suicidal ideations on September 14 and 17 and cut his wrists on both of those days. Those actions satisfy objective component of a serious medical need. Kamakeeaina v. City & Cty. of Honolulu, No. CIV. 11-00770 JMS, 2014 WL 1691611, at *7 (D. Haw. Apr. 29, 2014), aff'd sub nom. Kamakeeaina v. Maalo, 680 F. App'x 631 (9th Cir. 2017) (finding statements made by the plaintiff to the defendants that he was "ready to commit suicide" were sufficient to show a serious medical need).

Defendant Wetterer was not deliberately indifferent to Plaintiff's serious medical needs. Defendant Wetterer conducted two suicide evaluations of Plaintiff. During both evaluations, Defendant Wetterer reviewed Plaintiff's medical history, recent evaluations, discussed Plaintiff with custody staff, and in his professional opinion determined that Plaintiff

7

was not suicidal.  See Vasquez v. Cty. of Santa Clara, 803 F. App'x 100, 102 (9th Cir. 2020) (finding no deliberate indifference when Defendant, "the last mental health professional to evaluate [the decedent] before his suicide," "reviewed [his] medical records, consulted with the officer on duty, observed and conversed with [him], and, in his professional opinion, determined that [he] was not suicidal"); see also Hendon v. White, 320 F. App'x 717, 718 (9th Cir. 2009) (affirming dismissal of deliberate indifference claims because the Plaintiff's assertion that the Defendants improperly released him from suicide watch stated at most claim for negligence). ECF No. 57 at 21.  Further, any difference of opinion between Plaintiff and Defendant Wetterer on where Plaintiff should have been housed does not amount to deliberate indifference.  See Hendon, 320 F. App'x at 718 (holding that "difference in opinion between [Plaintiff] and the prison physicians about the preferred course of medical treatment [for suicide risk] does not constitute an Eighth Amendment violation").

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 55, be granted.  Given the absence of a triable issue on Plaintiff's deliberate indifference claim as against Defendant Wetterer, Defendant's assertion of qualified immunity does not bear evaluation here.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to the objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 2, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE